IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| v. | § |
| | § |
| ROBERT TIMOTHY BLAKE, | §   Civil Action No.  SA-15-CR-66-XR |
| | § |
| *Defendant*. | § |
| | § |

**ORDER**

The Defendant is charged in an indictment with (1) distribution of child pornography, (2) receipt of child pornography, and (3) possession of child pornography.

The Defendant filed a motion to suppress (docket no. 23). The Court held an evidentiary hearing on March 31. The Defendant's motion is denied.

**Background**

Prior to December 4, 2014, the Government became aware that a certain email address was being used to send and receive child exploitation material. Through subpoenas the FBI determined that the emails were being sent from a residence on Roan Lodge Street in San Antonio, Texas. The FBI obtained a search warrant and executed the search warrant on December 4, 2014.

At 6:10 a.m. law enforcement officers knocked and announced their presence at the Blake residence. When the Defendant opened the door, thirteen law enforcement officers entered the residence wearing protective gear and handguns drawn. The Defendant was immediately placed in handcuffs and remained in handcuffs for two to three minutes. FBI Agent

Baker advised the Defendant that he was not under arrest and they were there pursuant to a search warrant. Baker explained that the handcuffs were a precautionary measure and would be removed as soon as the house was cleared. The officers "cleared" the house ensuring there were no other occupants in the home besides the Defendant's spouse and that no weapons were within reach. As soon as the "all clear" was announced the handcuffs were removed from the Defendant.

Once the premises were secure, Agent Miller entered the residence. Agent Miller identified himself to the Defendant, told the Defendant he was not under arrest, and Agent Miller stated he would like to speak with him. While this explanation was taking place, five or six law enforcement officers began to search the upstairs portion of the home pursuant to the search warrant and five or six officers began to search the downstairs portion of the residence. Agent Miller, Agent Allovio and the Defendant walked to an upstairs bedroom. The Defendant entered the room and sat at a chair of his choosing. The Defendant was informed that any interview was voluntary, that he was not under arrest, that he was free to leave, and that at any time he could refuse to answer a question. He was asked only to be truthful in any answer he gave. The Defendant agreed to an interview and stated he wanted to cooperate. The officers offered the Defendant refreshments and an opportunity to use the restroom. The bedroom door was closed during the interview, but at no time did the Defendant attempt to leave or ask that the interview be halted. At an early point in the interview the Defendant spontaneously acknowledged to Agents Miller and Allovio that he knew why they were at his residence, said he could save them time, acknowledged it was because he had been downloading child pornography, and said it was "nasty stuff."

At some point in the interview he was asked if he would agree to sign a consent form that would allow the FBI to use his email address in an attempt to locate others trafficking in child pornography. He initially stated that he would be inclined to do so, but he might want to speak with his wife and an attorney before doing so. He never affirmatively stated he wanted to speak with an attorney at that time, never invoked any Fifth or Sixth Amendment rights, never stated that he wanted to remain silent, or any words to that effect. The officers promptly moved on to another question. Towards the end of the interview the Defendant was asked whether he had any inappropriate contact with a child and whether he would agree to a polygraph examination on that subject. Again, the Defendant stated that he might need to speak with his wife and an attorney before he agreed to a polygraph examination. He later declined an opportunity to submit to an examination.

At another point in the 70 to 90 minute interview, the agents and the Defendant moved to another room in the house so that the bedroom could be searched. Agent Clark entered the new room and advised that the Defendant's wife wanted to speak with the Defendant. Agents Miller and Clark remained in the room when the Defendant's wife entered to ensure that the situation remained calm between the spouses now that Ms. Blake was aware of the allegations and the explanation of the probable cause leading to the search warrant.

During the interview the agents were dressed in business attire and their weapons were not visible. The Defendant was not handcuffed during the interview. Although the Defendant would be required to stand and walk in front of two agents and open a door to leave the bedroom had he decided to end the interview and leave the premises, he never attempted to do so and would not have been stopped from doing so.

While the search was being conducted, the Defendant was not free to wander inside the premises, but the Defendant was free to go outside the premises or completely leave the property[1] or move about the premises with an escort.

Pursuant to the search warrant desktops, laptops, cameras, two hard drives, a thumb drive and numerous CDs were confiscated.

## Motion to Suppress

The Defendant argues that during the entire period after entry was made in his home he was in custody[2], not read his *Miranda* warnings[3], and that as a result all verbal statements he made were not made voluntarily. He alleges that the officers pointed their weapons at his forehead[4] and he further argues that he exercised his right against self-incrimination under the Fifth Amendment. Defendant also attacks the planning and execution of the search warrant as a carefully orchestrated attempt at securing verbal confessions from individuals under the guise that it is a non-custodial interview.

## Analysis

Whether a person is "in custody" is an objective inquiry that depends on the "totality of circumstances*."* *U.S. v. Wright*, 777 F.3d 769, 774 (5th Cir. 2015). Important factors include: (1) the length of the questioning, (2) the location of the questioning, (3) the accusatory, or non-accusatory, nature of the questioning, (4) the amount of restraint on the individual's physical

---

[1] The only conditioned place on his leaving was that if he decided to leave, for safety reasons he would not be allowed back into the residence until the search had been completed.
[2] Defendant relies upon *United States v. Cavazos*, 668 F. 3d 190 (5th Cir. 2012).
[3] It is uncontested that no *Miranda* warnings were administered. The Government argues that no *Miranda* warnings were required because the interview was a non-custodial interview and the Defendant was not under arrest.
[4] The only evidence proffered was that when FBI Agent Miller entered the house he had his handgun which had a flashlight device attached aimed at Defendant's waistband area so that he could illuminate the area and see whether Defendant had anything in his hands when the officers made entry into the home.

movement, and (5) statements made by officers regarding the individual's freedom to move or leave, *Id*. at 775.

This case is fairly similar to *U.S. v. McNair*, 2010 WL 2038297 (W.D. Tex. 2010). In *McNair*, McNair was told that the interview was voluntary, that he was not under arrest, that the agents were investigating trafficking of child pornography, that he was free to leave at any time, and that it "was up to him to answer any questions." Special Agents Allovio and Baker were wearing business suits during that interview. Their handguns remained concealed. The interview initially took place in a bedroom on the second floor to allow for the search of the first floor. The interview lasted approximately one hour and forty minutes. During the interview, McNair admitted to having an interest in child pornography, and acknowledged that he had downloaded images and videos. During the interview McNair signed a "consent to assume online presence" form, wherein he gave FBI agents authorization to take control of and use his "online presence" to Fram337 and other accounts. He acknowledged on this consent form that he had given this "consent freely and voluntarily, without fear, threats, coercion, or promises of any kind. . . ." After examining all of the circumstances surrounding the interrogation, the Court concluded that there was no restraint on McNair's freedom of movement of the degree associated with a formal arrest. McNair was told he was free to leave at any time, was informed that his interview was voluntary, and he was not handcuffed at any point.  The Court concluded that a reasonable person would have felt he was at liberty to terminate the interrogation and leave at any time. *See e.g., U.S. v. McLean*, 2010 WL 785170 (5th Cir. 2010).  The court of appeals affirmed.  *See* 444 F. App'x 7690 (5th Cir. 2011) ("McNair was in his home when the detention occurred, and an agent testified that McNair was told he was free to leave. We have held that under such circumstances, a reasonable person does not suffer the restraints associated with an arrest.

5

*United States v. Harrell*, 894 F.2d 120, 124–25 (5th Cir. 1990). Further, an agent testified that McNair was told that he was not under arrest and would not be arrested that day, which also weighs against a finding of custody. *See United States v. Howard*, 991 F.2d 195, 200 (5th Cir. 1993). In addition, agents told McNair that it was his decision whether to talk to them, and McNair agreed to cooperate and signed a consent form that allowed agents to use his online identities and passwords. Although the initial presence of numerous armed FBI agents wearing raid vests may have been intimidating[5], that alone is not enough. *See Howard*, 991 F.2d at 200. Further, the fact that McNair's interrogation lasted for almost two hours does not mean that the interrogation was per se custodial. *See Harrell*, 894 F.2d at 124 & n. 1.").

In this case, the temporary restriction initially placed upon the Defendant when the house was first entered into by officers and the premises was being checked for the presence of other occupants or dangerous weapons does not place the Defendant in custody. *See United States v. Fike*, 82 F.3d 1315, 1325 (5th Cir. 1996) *overruled on other grounds by United States v. Brown*, 161 F.3d 256 (5th Cir. 1998) (holding a defendant was not in custody for *Miranda* purposes after officers violently entered the house and pointed guns at the defendant for the first few minutes of executing a search warrant); *United States v. Wright*, 777 F.3d 769, 781 (5th Cir. 2015) (finding an interrogation was non-custodial where "at the very most, [the defendant] was handcuffed for 10–15 minutes along with other occupants of the home" when officers first entered the home, and the defendant was not handcuffed during the interview in question); *United States v.*

---

[5] The Defendant in this case relies heavily on this fact. The Government presented testimony that during the briefing held in advance of the execution of the search warrant the officers received a safety briefing. During this briefing they were reminded that sometimes child predators become suicidal or homicidal when confronted. Special Agent Miller testified that the execution of search warrants in child pornography cases are more dangerous than their usual search warrants. As Defense counsel acknowledged, until agents enter the home it is difficult to assess, without the benefit of hindsight, what the appropriate number of officers are needed to secure a premises and safely conduct the execution of a search warrant. Further, until such time entry is made into the premises it is difficult to predict how orderly or cluttered the premises may be and how long it will take to conduct a search.

*Bengivenga*, 845 F.2d 593, 598 (5th Cir. 1988) ("[A] Fourth Amendment seizure does not necessarily render a person in custody for purposes of *Miranda* . . . the core meaning [of] . . . custody in the *Miranda* sense [is] the restraint of a person's freedom to walk away from the police . . . custody arises only if the restraint on freedom is a certain degree—the degree associated with formal arrest.") (internal quotations omitted).

Likewise, the mere fact that the Defendant was not allowed to roam inside his house while the officers were looking for items responsive to the search warrant does not place the Defendant in custody. *Compare Fike*, 82 F.3d at 1325 (holding a defendant was not subject to a custodial interrogation where officers breached the door and pointed guns at him, he was not free to roam inside his own home while several officers executed a search warrant, he was told multiple times he was not under arrest, and he voluntarily answered questions), *with United States v. Cavazos*, 668 F.3d 190, 194-95 (5th Cir. 2012) (holding a district court could find a custodial interrogation where a defendant was immediately targeted and handcuffed at the beginning of a search, forcefully separated from his family in a different room for questioning, told the questioning was "non-custodial" as opposed to a more layman's term such as he was "free to leave," and given no privacy to use the bathroom or talk on the phone during the interrogation); *see also United States v. Hargrove*, 625 F.3d 170, 181 (4th Cir. 2010) (holding an interrogation was non-custodial where a defendant could move about his house to attend to his pets or perform other tasks, but could not roam completely freely as it might interfere with the officers conducting the search; where the district court also found the questioning was "comfortable," "amicable," and "non-threatening").

Otherwise, during the interview at the home, reviewing the *Wright* factors and the totality of the circumstances, the Court finds that the Defendant was not in custody.  He was advised the

7

interview was voluntary. He refused to answer certain questions and was permitted to do so. The officers did not physically control the Defendant any time after the initial entry into the premises. The questioning was non-threatening.

## Conclusion

The Defendant was not in custody throughout the events described above, and his verbal statements were made voluntarily. A reasonable person would have felt he was at liberty to terminate the interrogation and leave at any time. The motion to suppress is in all respects denied.

SIGNED this 2nd day of April, 2015.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE