# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ROBERT TIMOTHY BLAKE,** | § | |
| **# 46959-380** | § | |
| | § | |
| **Movant,** | § | |
| | § | **SA-18-CV-994-XR** |
| **v.** | § | **SA-15-CR-066-XR-1** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Respondent.** | § | |

## ORDER

Before the Court are *pro se* Movant Robert Timothy Blake's ("Blake") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") (ECF No. 93); the Government's Response (ECF No. 96); Blake's Reply (ECF No. 103); Blake's Supplement (ECF No. 104); the Government's Response to the Supplement (ECF No. 108); and Blake's Reply to the Supplement (ECF No. 112). For the following reasons, Blake's Section 2255 Motion is **DENIED**.

### PROCEDURAL BACKGROUND

On February 4, 2015, Blake was charged in a five-count indictment with violations of 18 U.S.C. § 2252A(a)(2) & (b) and 18 U.S.C. § 2252A(a)(5)(B). (ECF No. 15). Count I charged Blake with distribution of child pornography, Count II charged him with receipt of child pornography, and Counts III through V charged him with possession of child pornography. (*Id.*). On January 7, 2016, Blake pleaded guilty to Counts I and III of the indictment. (ECF No. 41).

The Presentence Investigative Report (PSI) reflected a base offense level of 22, pursuant to U.S.S.G. § 2G2.2(a)(2). (ECF No. 59 at 8). However, the following levels were added to the base level:

- two levels because the material in Blake's collection involved a prepubescent minor who had not attained the age of 12 years, *see id.* § 2G2.2(b)(2);

- five levels for distribution for the receipt or expectation of receipt of a thing of value but not for pecuniary gain, *see id.* § 2G2.2(b)(3)(B);

- four levels for material that portrays sadistic or masochistic conduct or other depictions of violence, *see id.* § 2G2.2(b)(4);

- five levels for pattern of activity involving the sexual abuse of a minor, *see id.* § 2G2.2(b)(5);

- two levels for the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material or for accessing with intent to view the material, *see id.* § 2G2.2(b)(6); and

- five levels because Blake was found to be in possession of more than 600 images, *see id.* § 2G2.2(b)(7)(D). (*Id.* at 8-9).

These additions resulted in a total offense level of 45, which was then reduced by three levels for acceptance of responsibility, *see id.* §§ 3E1.1(a) and (b), for a total adjusted offense level of 42. (ECF No. 59 at 9). Based on a total offense level of 42 and a Criminal History Category I, Blake's advisory guideline range was determined to be 360 months to life imprisonment. (*Id.* at 15). However, because the statutorily authorized maximum sentences were less than the maximum of the applicable guideline range, the advisory guideline range was reduced from 360 months – life imprisonment to 360 – 480 months imprisonment, *see* U.S.S.G. § 5G1.2(b). (*Id.*).

However, at sentencing, the Court sustained defense counsel's argument opposing a five-level increase based on a pattern of activity involving the sexual abuse of a minor. (ECF No. 73 at 29). As a result, the adjusted offense level was reduced to 37 and the advisory guideline range was lowered to 210 – 262 months imprisonment. (*Id.* at 30). On June 29, 2016, Blake was sentenced to a term of 240 months imprisonment on Count I, and a term of 22 months imprisonment on Count III, with both terms to be served consecutively for a total term of imprisonment of 262 months. (ECF No. 63). Additionally, Blake was sentenced to lifetime supervised release and ordered to pay

a $100.00 special assessment on each count and $9,000.00 in restitution to three of the victims of his offenses. (*Id.*). Pursuant to the Plea Agreement, the remaining three counts alleged in the indictment were dismissed.

Blake appealed, arguing: (1) the Government breached the plea agreement at sentencing; (2) his sentence was not reasonable; (3) the Court failed to subject his sentence to a thorough adversarial testing as contemplated by Federal Sentencing Procedure; and (4) his sentence exceeded the statutory maximum to which he pleaded. (ECF No. 66). The Fifth Circuit rejected these arguments and dismissed the appeal, finding "Blake's remaining claims challenging the substantive reasonableness of the sentence and the adversarial nature of the sentencing hearing [were] barred by the appeal waiver." (ECF No. 97 at 4).

On September 13, 2018, Blake executed the present Section 2255 Motion, alleging trial counsel rendered ineffective assistance by: (1) erroneously advising him he would receive probation if he pleaded guilty; (2) failing to adequately inform him of the consequences of accepting the plea bargain; (3) failing to have any member of the defense team actually look at the photographs found on his computer; (4) failing to investigate his theory that the images were put on his computer by someone else; (5) failing to present witnesses at sentencing; (6) failing to object to the Government's introduction of improper evidence at the sentencing hearing; (7) failing to object to the Government's misrepresentation of evidence at the sentencing hearing; (8) failing to adequately explain the Federal Sentencing Guidelines to him; and (9) advising him to plead guilty after he told counsel some of the allegations were untrue. (ECF No. 93).

The Government filed a response arguing Blake could not show cause and prejudice in this case and moreover, made no claim of actual innocence (ECF No. 96 at 5-6); alternatively, the Government argued Blake failed to show counsel's performance was deficient and the deficient

performance prejudiced his defense (*id.* at 12-20). Blake then filed a Reply to the Government's Response stating he was seeking to "present to the Court for its review Supporting Facts for the Grounds presented in [his] 2255 motion." (ECF No. 103 at 1). However, in his Reply, Blake alleges for the first time that he is innocent of the charge of distribution of child pornography. (*Id.*). Attached to Blake's Reply are the following: two affidavits from Deborah Gabrielle Warren Blake; eleven letters of support from family members, an employer and a colleague; an excerpt from the sentencing transcript; and several documents purporting to establish Blake's residency. (*Id.*).

**APPLICABLE LAW**

### 1. Legal Standard

A federal defendant may move to vacate, set aside, or correct his sentence if: (1) the imposition of the sentence was in violation of the Constitution or the laws of the United States; (2) the District Court that imposed the sentence lacked jurisdiction; (3) the sentence imposed was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Thus, section 2255 post-conviction relief is reserved for errors of constitutional dimension and other injuries that could not have been raised on direct appeal and, if left unaddressed, would result in a complete miscarriage of justice. *See, e.g., United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Payne*, 99 F.3d 1273, 1281 (5th Cir. 1996).

### 2. Waiver

A defendant may waive his right to direct appeal and collateral attack of a conviction and sentence by means of a plea agreement as long as the waiver is both knowing and voluntary. *See, e.g., United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005); *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005); *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994). "[W]hen

the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he has raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed, regardless of whether the court specifically admonished him concerning the waiver of appeal." *McKinney*, 406 F.3d at 746 (quoting *Portillo*, 18 F.3d at 293). A district court must first determine whether the waiver was voluntary and knowing, and then evaluate whether the waiver "applies to the circumstances at hand, based upon the plain language of the agreement." *Bond*, 414 F.3d at 544 (citing *McKinney*, 406 F.3d at 746–47).

A defendant knowingly enters a waiver when "the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances − even though the defendant may not know the specific detailed consequences of invoking it." *United States v. Ruiz*, 536 U.S. 622, 629 (2002). A plea qualifies as intelligent when the defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley v. United States*, 523 U.S. 614, 618 (1998).

The Supreme Court's decision in *Boykin v. Alabama* requires a hearing prior to entry of a guilty plea, at which the Court must elicit an affirmative showing that the decision to plead guilty was voluntarily and intelligently made. 395 U.S. 238, 243 (1969); *Matthew v. Johnson*, 201 F.3d 353, 367 n.22 (5th Cir. 2000). Rule 11 of the Federal Rules of Criminal Procedure provides procedural safeguards for assuring guilty pleas are voluntary and knowing, by requiring a judge to ensure the defendant understands the law governing his crime in relation to the facts of his case, as well as his rights as a criminal defendant. *United States v. Vonn*, 535 U.S. 55, 62 (2002); *see* Fed. R. Crim. P. 11.

However, a determination of whether a defendant understands the consequences of his guilty plea, including the waiver of his right to appeal or collaterally attack his conviction and sentence, does not require the trial court to conclude the defendant has a perfect understanding of the consequences; rather, the court must only establish the defendant understands the charges and has a realistic understanding of the consequences. *United States v. Gracia*, 983 F.2d 625, 627–28 (5th Cir. 1993). The court must also ensure there was no coercion to enter the guilty plea. *Id.* Compliance with the admonishments required under Rule 11 "provides prophylactic protection for the constitutional rights involved in the entry of guilty pleas." *Id.* at 627; *see* FED. R. CRIM. P. 11.

### 3. Ineffective Assistance of Counsel

Even if a defendant waives his right to appeal or collaterally attack his plea and sentence, he can avoid those waivers based on a claim of ineffective assistance of counsel if he shows "the claimed assistance directly affected the validity of that waiver or the plea itself." *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002). An ineffective assistance of counsel claim in the context of a guilty plea is subject to the same standard as any other ineffective assistance claim, i.e., the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

To successfully state a claim of ineffective assistance of counsel under *Strickland*, a prisoner must demonstrate counsel's performance was deficient and the deficient performance prejudiced his defense. *Id.* at 687. The failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696.

The proper standard for attorney performance is that of reasonably effective assistance. *Id.* at 688. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that, considering all the circumstances, counsel's representation fell below an objective standard of reasonableness. *Id.* A fair assessment of attorney performance requires

that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Id.* at 687–89. To determine whether counsel's performance was constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Id.* at 689. An attorney's strategic choices, usually based on information supplied by defendant and from a thorough examination of relevant facts and law, are virtually unchallengeable. *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998), *cert. denied*, 528 U.S. 895, 120 S. Ct. 224 (1999). Counsel is required neither to advance every nonfrivolous argument nor to investigate every conceivable matter, inquiry into which could be classified as non-frivolous. *See Neal v. Cain*, 141 F.3d 207, 214–15 (5th Cir. 1998) (petitioner's complaints regarding counsel's failure to raise specific defenses did not satisfy prejudice prong of *Strickland* when proposed defenses lacked merit); *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (counsel not deficient for failing to pursue frivolous point); *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) (Sixth Amendment does not require counsel to file meritless motions).

When a prisoner challenges his plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To satisfy this requirement, the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695–96. In this analysis, a defendant's sworn statements made to the court when a guilty plea is entered carry a strong presumption of verity, and the "subsequent presentation of conclusory

allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

With respect to sentencing issues, the defendant must establish a reasonable probability that but for counsel's errors with respect to sentencing matters, he would have received less prison time. *See United States v. Grammas*, 376 F.3d 433, 436–38 (5th Cir. 2004); *Glover v. United States*, 531 U.S. 198, 203 (2001).

**ANALYSIS**

1. **Trial counsel erroneously advised Blake regarding his plea and sentence and failed to adequately explain the sentencing guidelines or advise him of the consequences of pleading guilty. (Grounds One, Two, Eight, and Nine)**

Initially, Blake contends his plea was neither knowing nor voluntary because: (1) his attorney erroneously advised that he would receive probation if he pleaded guilty; (2) he was advised to plead guilty despite informing his attorney some of the allegations were untrue; (3) he was not adequately advised of the consequences of his guilty plea; and (4) the sentencing guidelines were not adequately explained to him. (ECF No. 93). Subsequently, Blake raised six additional grounds in his Reply, alleging: (1) his attorney never informed him there was a mandatory minimum sentence of five years; (2) he did not know he was charged with distribution until he was presented with the plea document and his attorney told him the "distribution information" would be "investigated, fully tested, and disputed"; (3) he was told the only way to avoid a trial and prison time was by accepting the plea; (4) no details were explained to him related to any waivers but he "was told that he still reserved a right to appeal"; (5) he was not informed that additional information not contained in the plea document would be presented to the Court at sentencing "without any restrictions" nor was he presented with a copy of the presentence report or interviewed by his attorney regarding information contained in the presentence report; and (6)

he was not informed of any guideline calculations or how enhancements could be applied, nor was he advised of the sentence range the Court was required to consider and apply. (ECF No. 103).

In support of his first ground, Blake submits an affidavit from his wife who states Blake's attorney told Blake in her presence that by pleading guilty "the likely outcome" would be probation. (*Id.* exh. A). In his sworn affidavit, Blake's attorney disputes this claim, stating he specifically advised Blake of the punishment range for the offenses charged and to which he was pleading guilty to, which precluded probation. (ECF No. 96, exh. A). Counsel also states that "in the numerous jail visits in addition to discussing other matters, [he] made it a point to explain the consequences of accepting the plea agreement, which was to waive his right to a trial, confrontation of witnesses and evidence as well as certain rights of appeal." (*Id.*). Additionally, counsel states he went over the plea document and presentence report word by word with Blake and answered all of his questions with respect to both documents. (*Id.*).

Although the parties submit controverting affidavits regarding whether Blake was told "the likely outcome" of pleading guilty would be probation, the record establishes Blake was advised of the charges against him and the sentence that *could* be imposed, which not only excluded the possibility of parole but compelled a five-year mandatory minimum sentence. At his initial appearance on January 6, 2015, Blake was "informed of and received copy of charging document," which advised Blake his sentence could include 5 to 20 years' imprisonment, lifetime supervised release, imposition of a $250,000.00 fine and a $100.00 special assessment, and payment of restitution. (ECF No. 7).

Additionally, Blake signed a written plea agreement that detailed his sentencing range, including a mandatory *minimum* sentence of five years' imprisonment. (ECF No. 41 at 2). The plea agreement provided "the Defendant acknowledges that he has discussed this range of

punishment and penalties with his attorney, and still wants to plead guilty in this case." (*Id.*). Importantly, the plea agreement specifically provided the defendant "is [] aware that the sentence to be imposed does not provide for parole." (*Id.* at 4). Moreover, notwithstanding his current contentions, in signing the plea agreement, Blake affirmed he "believes he [ ] received effective assistance of counsel and that he [ ] had sufficient time to consult with his counsel regarding this plea agreement and the punishment that could be imposed". (*Id.* at 5). Above Blake's signature, in capital letters, was the following statement: "I HAVE READ (OR HAD READ TO ME) THE ABOVE PLEA AGREEMENT IN ITS ENTIRETY AND AGREE TO THE TERMS SET FORTH IN IT . . ." (*Id.* at 10).

Further, although Blake now contends counsel failed to adequately inform him of the consequences of accepting the plea bargain, at his Rule 11 hearing, Blake acknowledged signing the plea agreement of his own free will after reading the plea agreement for himself. (ECF No. 72 at 6). Blake also acknowledged speaking to his attorney about how the sentencing guidelines might apply in his case. (*Id.* at 8). Also, the Court reviewed with Blake the penalties he was facing by pleading guilty, and specifically advised Blake the sentence on Count I would not be less than five years and could be up to 20 years, while the sentence on Count III had no minimum term of imprisonment and could be up to 20 years. (*Id.* at 9). Blake stated he understood the penalties. (*Id.*). He also affirmed he was satisfied with the representation provided by his trial counsel. (*Id.* at 4).

Furthermore, when asked by the Court at his Rule 11 hearing if he understood all the questions the Court had inquired of him, including whether he understood the consequences of pleading guilty, Blake responded in the affirmative. (*Id.* at 10). Finally, the Fifth Circuit found Blake understood the consequences of his plea, noting "Blake stated that he understood and did

not express any confusion or ask any questions concerning the appeal waiver. Blake knowingly and voluntarily waived his right to appeal and the appeal waiver is valid and enforceable." (ECF No. 93).

Blake's statements in open court have a strong presumption of verity. *See Lee v. United States*, 137 S. Ct. 1958, 1967 (2017). "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* A defendant's statements in open court pose a "formidable barrier in any subsequent collateral proceeding" in which the defendant challenges his guilty plea. *Blackledge*, 431 U.S. at 74; *see also United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) ("[W]hen a defendant's allegations contradict his sworn testimony given at a plea hearing, we have required more than 'mere contradiction of his statements,' typically 'specific factual allegations supported by the affidavit of a reliable third person.'") (quoting *United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986)). Moreover, "an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where … an adequate plea hearing is conducted." *Buck-Soltero v. United States*, No. SA-16-CA-1211-XR, 2017 WL 933245 (W.D. Tex. Mar. 7, 2017) (quoting *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007)).

Here, the record reflects Blake was given notice of the true nature of the charges against him and possible sentence based on the charges. Blake informed the Court he had been given sufficient time to go over the plea agreement with his attorney and ask questions. (ECF No. 72 at 4, 6-7). The plea agreement clearly stated Count I carried a mandatory minimum sentence of 5 years' imprisonment and that the sentence to be imposed did not provide for parole (ECF No. 41

at 2). Consequently, Blake's contentions that he was not advised of the 5 year minimum sentence and that he pleaded guilty because he was led to believe he would receive probation lack merit.

Likewise, although Blake now complains his attorney failed to adequately inform him of the consequences of pleading guilty and further, failed to adequately explain the sentencing guidelines, Blake advised the Court he was happy with counsel's representation. (ECF No. 72 at 4). Additionally, Blake agreed he had been given enough time to discuss the agreement with his attorney (*id.* at 6-7), and that he spoke with his attorney about how the sentencing guidelines might apply in his case (*id.* at 8). Further, Blake was advised by the Court that although the sentencing guidelines are advisory, they are usually followed. (*Id.* at 8). Blake stated he understood and still wished to enter his plea. (*Id.* at 8-10). Consequently, his contentions that his attorney failed to adequately inform him of the consequences of pleading guilty and explain the sentencing guidelines also lack merit.

Finally, Blake maintains trial counsel rendered ineffective assistance because he advised him to enter a plea of guilty even though Blake informed him that portions of the allegations were untrue. (ECF No. 103 at 26). In particular, Blake denies the following: telling agents he used the computers and digital equipment to distribute, receive, and possess images and videos depicting the abuse of children; admitting he received e-mails that contained child exploitation material; admitting he solicited those e-mails using a fake name; visiting a Russian website where he obtained child pornography and chatted with others for e-mail contacts for trading; admitting he used child pornography to masturbate; confessing to agents and describing in detail the way he sent and received the images; confessing to agents he knowingly and intentionally distributed, received and possessed child pornography; and telling agents he traded child pornography with

users of the Russian web site. (*Id.*). Blake asserts his attorney told him he could not challenge the information in the plea if he did not accept it. (*Id.*).

Even so, Blake confessed to the agents that he knowingly and intentionally distributed, received and possessed child pornography. (ECF 59 at 6). And although he now disputes confessing, when asked at his Rule 11 hearing whether he did what was alleged under the factual basis for his plea, which included confessing to knowingly and intentionally distributing, receiving and possessing child pornography, Blake responded, "Yes, Your Honor." (ECF No. 72 at 7). Blake was also asked whether he signed the plea agreement of his own free will and he stated he had. (*Id.* at 6). Further, Blake advised the Court no one had threatened, coerced, or forced him into pleading guilty and that given everything discussed, including the amount of jail time he was facing, he still wished to plead guilty. (*Id.* at 10).

Accordingly, Blake's claims that his plea was not knowingly or voluntarily entered because his attorney told him he would receive probation if he pleaded guilty, he was advised to plead guilty despite informing his attorney some of the allegations were untrue, he was not adequately advised of the consequences of pleading guilty, and the sentencing guidelines were not adequately explained to him lack merit and are **DENIED**.

**2. Trial counsel failed to have defense team view photographs or investigate Blake's theory regarding how the images appeared on his computer. (Grounds Three and Four)**

In his third ground, Blake contends trial counsel rendered ineffective assistance by failing to have any member of the defense team view the photographs found on his computer despite assuring Blake a full investigation was going to be conducted by the legal team and a forensic investigator. (ECF No. 103 at 7). Blake maintains that although his wife paid counsel $5,000.00

to hire an expert to investigate the digital evidence in this case, no investigation was conducted. (*Id.*).

However, in an affidavit attached to the Government's Response, Blake's attorney states:

[A] digital evidence expert with Spartans Investigative Group was retained by the defense to assist counsel in reviewing the photographic evidence. With the assistance of [the expert], a specific evidence request was formulated and received which included all of the forensic images via their hash values in report form, the identi[t]y of all tools used in the course of handling the forensic examination, metadata and exi[t] data of the images and confirmation of identification by NCMEC. The Government provided the requested evidence requested and the same was examined by [the expert]. On April 1, 2015[,] [the expert] and I met with FBI agent [  ] and AUSA [  ] at the FBI office in San Antonio and were shown actual images, in particular those that would qualify as images subject to enhancements such as images of prepubescent minors and images portraying sadistic or masochistic conduct.

(ECF No. 96, exh. A). Further, according to the PSI, a total of 602 image files and 205 video files of child pornography were located on Blake's digital devices. (ECF No. 59 at 5). Although it appears trial counsel may not have viewed every image, he states he viewed "those that would qualify as images subject to enhancements such as images of prepubescent minors and images portraying sadistic or masochistic conduct." (*Id.*). Given the existence of images subject to enhancements, it is unclear how viewing the remaining images would have benefitted Blake or how he was prejudiced by counsel's failure to view all 602 images.

In his fourth ground, Blake complains his attorney rendered ineffective assistance in failing to investigate Blake's theory regarding how the images appeared on his computer. (*Id.*). Blake asserts he told his attorney he "had no knowledge of any known child pornography stored in any of his computers or digital media" and that "NO child pornography was sent into a[n] e-mail, or was distributed in any way by the defendant." (ECF No. 103 at 7). In his Reply, executed over three years after he entered his plea of guilty, Blake claims for the first time that he had a program on his computers that automatically downloaded any e-mail account into the computer for later

viewing when off-line. (*Id.* at 9). Blake maintains large amounts of random e-mail messages were sent to several e-mail accounts attached to this program and the contents were then placed into the computer's off-line database created by this program. (*Id.*). Blake contends he never viewed or opened "vast amounts of these attachments."[1] (*Id.*). Blake also maintains he was getting messages thanking him for allowing other users to access the e-mail account. (*Id.*). Blake states he told his attorney about his computer program and the emails and claims his attorney told him one e-mail account used by him was also being used by someone else. (*Id.*).

In addition to receiving large amounts of random e-mail messages with pornographic images attached due to his use of a "program," Blake also appears to have had the grave misfortune of moving into a house that contained several boxes of electronics left behind by a previous unnamed occupant. (*Id.* at 10). Using electronics presumably taken from these boxes, Blake states he connected a hard drive to his computer and used digital camera cards that appeared to be blank. He states these electronics were seized by the FBI and, like the e-mails Blake randomly received, contained large amounts of pornographic material. (*Id.*).

In his affidavit, Blake's trial counsel states that "[o]n several occasions early in the case the theory was explored, however the evidence seized did not provide support for the theory. Images were found on the defendant's computer, laptop, and stored digital hard drive and on several CDs." (ECF No. 96, exh. A). Counsel also states the analysis performed by the expert did not support Blake's theory. (*Id.*). Moreover, although Blake now denies confessing to the agents and describing in detail the way he sent and received the images, at his sentencing, Blake testified in open court, stating:

---

[1] Blake's contentions here are also refuted by his ex-wife, Betty Perry, who stated the couple divorced due to Blake's drug and pornography habits. (ECF No. 59 at 19). Perry also stated she was contacted by Blake's girlfriend who reported finding child pornography on Blake's computer. (*Id.*).

Your Honor, I understand why I am here today, and I would like to communicate to the Court my ability to appreciate the serious nature of my offense.

The first thing I wish to say is I am very, very sorry for my actions that contributed to this horrible crime. I am sad for the victims and the abuse they endured at the hands of their abusers.

I realize that the victims live with the emotional effects of these crimes long after any images are produced of the abuse. I have been totally honest about my involvement, about what I have done, and there is no reasonable explanation that can justify my actions that contributed to my recklessness.

What I at first considered to be harmless use of the Internet evolved into a habit I did not have total control of. Because of boredom and laziness, I created ways to collect any image my computer encountered. I did not respect my responsibility to filter the content I was collecting or place any major concern that others were sending me child pornography through the e-mails.

I did not intend to distribute or traffic child pornography. I wish I could stand here today and tell you why I did what I did, but I can't. I have spent many, many hours in the last 18 months trying to understand why. Excuse me.

I take full responsibility for my actions and involvement that caused these images to come to my computer, and I am very sorry for what I have done and how it has impacted my family and friends. I never wanted them to suffer for my actions and it hurts me deeply.

(ECF No. 73 at 32–34). Based on the foregoing, trial counsel appears to have had a reasonable basis for not inquiring further into Blake's theory. *See Jones*, 163 F.3d at 300; *Smith*, 977 F.2d at 960; *Schwander*, 750 F.2d at 500. Courts are deferential to an attorney's strategic choices, and counsel is not required to advance every non-frivolous argument nor to investigate every conceivable matter. *See Jones*, 163 F.3d at 300; *Smith*, 977 F.2d at 960; *Schwander*, 750 F.2d at 500.

Blake also fails to show prejudice. Blake was facing a five-count indictment and in exchange for his plea to two counts, the Government agreed to dismiss the remaining counts and not to oppose a three-level reduction for acceptance of responsibility. Accordingly, Blake cannot demonstrate "there is a reasonable probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58. Because Blake fails to demonstrate deficient performance or prejudice, his claims that trial counsel rendered ineffective assistance by failing view every photograph and to investigate Blake's theory that someone else was responsible for the images on his devices lack merit and are **DENIED**.

### 3. Trial Counsel failed to present witnesses at sentencing. (Ground Five)

Blake next complains trial counsel was ineffective because he failed to present witnesses at the sentencing hearing. (ECF No. 103 at 13). Blake complains that although the witnesses were present, they were not allowed into the courtroom and did not testify on his behalf. (*Id.*). Blake submits copies of affidavits and letters from these witnesses, contending that had they been allowed to testify, they would have provided the Court with valuable information regarding his character and history. (*Id.*).

However, the record reflects Blake's attorney advised the Court of the witnesses' presence and proffered testimony at the sentencing hearing. (ECF No. 73 at 26-29). Based on counsel's arguments and the fact that he was prepared to offer witness testimony, the Court sustained trial counsel's objection and deleted the five-point enhancement for engaging in a pattern of activity involving the sexual abuse of a minor. As a result, Blake cannot establish a reasonable probability that, but for counsel's errors with respect to sentencing matters, he would have received less time in prison. *See Grammas*, 376 F.3d at 436–38; *Glover*, 531 U.S. at 203.

Accordingly, Blake's claim that trial counsel was ineffective for failing to present witnesses during his sentencing hearing lacks merit and is **DENIED**.

**4. Trial counsel failed to object when the Government introduced improper evidence and misrepresented evidence. (Grounds Six and Seven)**

In his sixth ground, Blake maintains trial counsel was ineffective in failing to object to the Government's introduction of improper evidence at sentencing, and in ground seven contends trial counsel was ineffective in failing to object to the Government's misrepresentation of evidence at the sentencing hearing. Specifically, Blake contends his attorney remained silent at sentencing when the Government made the following statements to the Court: Blake took photos of children by the bus stop and in his neighbor's back yard for his sexual gratification; Blake fled from Rhode Island to Georgia to evade a previous child pornography investigation; Blake sexually abused his daughter; Blake sent e-mails asking for child pornography; Blake encouraged others to sexually assault children so he could capture the assault on film or video; Blake already admitted to email messages, and trafficking or distributing child pornography; Blake is a danger to society because of his strong interest in the sexual abuse of children; Blake chooses to spend his time sexually abusing and exploiting children; and Blake masturbates daily viewing the sexual abuse of children. (ECF No. 103 at 15). Counsel also failed to correct the following assertions by Government: that Blake took photographs of neighborhood children on a camera found during the execution of a search warrant of his residence; that Blake sexually abused his daughter; that Blake fled from Rhode Island to evade an investigation that he was in possession of child pornography; that Blake actively traded child pornography by email and encouraged others to sexually assault children; and that Blake is a pedophile.[2] (*Id.* at 18).

However, as previously noted, Blake confessed to the agents that he knowingly and intentionally distributed, received and possessed child pornography. (ECF 59 at 6). Additionally, he admitted the factual basis for his plea was true (ECF No. 72 at 6-7) and that he was responsible

---

[2] Several of these comments overlap and it is unclear whether Blake is claiming they are false or misrepresented.

for distributing pornography (ECF No. 73 at 32-34). Also, the Plea Agreement signed by Blake specifically states "[t]he defendant understands and agrees that nothing in this Plea Agreement shall prohibit the Government from presenting all relevant facts, information and evidence to the United States Probation Office and to the Court. (ECF No. 41 at 6).

As previously stated, defense counsel is required neither to advance every nonfrivolous argument nor to investigate every conceivable matter, inquiry into which could be classified as non-frivolous. *See Neal*, 141 F.3d at 214–15 (petitioner's complaints regarding counsel's failure to raise specific defenses did not satisfy prejudice prong of *Strickland* when proposed defenses lacked merit); *Sones*, 61 F.3d at 415 n.5 (counsel not deficient for failing to pursue frivolous point. Further, given that Blake received a three-level reduction for acceptance of responsibility, trial counsel had to proceed with caution to avoid jeopardizing this reduction. *United States v. Holmes*, 675 F. App'x 491, 492 (5th Cir. 2017) ("[A] frivolous objection or denial of relevant conduct may be a basis for withholding a reduction for acceptance of responsibility."); *see also* U.S.S.G. § 3E1.1, comment. (n.1(a)) ("[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility."). As such, the challenged conduct appears to be the product of reasoned trial strategy and will not support a claim for ineffective assistance of counsel. *See Cornet*, 2018 WL 4183226, *8 n.90 (citing *Schlang*, 691 F.2d at 799).

In any event, Blake fails to show how he was prejudiced by trial counsel's purported deficiency or that, but for trial counsel's performance he would not have pleaded guilty and would have, instead, proceeded to trial. *Hill*, 474 U.S. at 58. Accordingly, Blake's claims that trial counsel was ineffective because he failed to object to the introduction and/or misrepresentation of evidence at sentencing lack merit and are **DENIED**.

### 5. Blake's claim of innocence.

In his Reply, Blake argues for the first time that he is innocent of the charge of distribution of child pornography. (ECF No. 103 at 1). The Fifth Circuit has held that a freestanding or stand-alone claim of actual innocence does not constitute an independent basis for federal habeas relief. *Floyd v. Vannoy*, 894 F.3d 143, 155 (5th Cir. 2018). The habeas petitioner bears the burden of proving actual innocence and "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* Further, because Blake pleaded guilty, he must show he was factually innocent of not only the counts to which he pleaded, but also any "more serious" charges the Government agreed to dismiss pursuant to the plea bargain. *United States v. Scruggs*, 714 F.3d at 258, 265 (5th Cir. 2013). In this case, Counts II (Receipt), IV (Possession) and V (Possession) were dismissed by the Government pursuant to the Plea Agreement.

Blake was charged with distributing child pornography on September 22, 2013. (ECF No. 15). He signed the written plea agreement, admitting to the facts set out in plea agreement. (ECF No. 41). A signed, unambiguous plea agreement must be accorded great evidentiary weight. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994). Official documents such as a written plea agreement are "entitled to a presumption of regularity and are accorded great evidentiary weight." *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985).

Further, at his Rule 11 hearing, Blake was specifically asked by the Court whether paragraphs 2, 3, and 4 of the written plea agreement comprise "what you did and is that what you are pleading guilty to?", to which Blake responded, "Yes, Your Honor". (ECF No. 72 at 7). "Solemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 73-74; *see also Cervantes*, 132 F.3d at 1110.

Moreover, during his sentencing, Blake stated he understood why he was there and that he appreciated the serious nature of his offenses. (ECF No. 73 at 32-33). He apologized for his "actions that contributed to this horrible crime" and stated "there is no reasonable explanation that can justify my actions that contributed to my recklessness. What at first considered to be harmless use of the internet evolved into a habit I did not have total control of." (*Id.* at 33). "I wish I could stand here today and tell you why I did what I did, but I can't. I have spent many, many hours in the last 18 months trying to understand why". (*Id.*). "I take full responsibility for my actions and involvement". (*Id.*). Blake also admitted his involvement in the offense to the probation officer in preparation for the presentence report, and advised he had no excuse for his actions. (ECF No. 59 at 8). Finally, Blake's ex-wife reported that the couple divorced in May of 2010, due to Blake's drug and pornography habits. (ECF No. 59 at 19). Based on the evidence in this case, Blake fails to meet his burden of demonstrating that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Floyd*, 894 F.3d at 155.

Accordingly, Blake's claim that he is innocent is **DENIED**.

### EVIDENTIARY HEARING

An evidentiary hearing on a section 2255 motion is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A district court's decision not to hold an evidentiary hearing is reviewed for abuse of discretion. *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (quoting *Cervantes*, 132 F.3d at 1110). Because the issue presented in this case can be resolved on the basis of the record, the Court finds an evidentiary hearing is not required.

.

CONCLUSION

Blake fails to show his trial counsel rendered deficient performance or that he was prejudiced by trial counsel's performance; therefore, his claims that he was denied effective assistance of counsel lack merit. *See Strickland*, 466 U.S. at 686–87. Blake also has not shown he is innocent. Consequently, Blake's Section 2255 Motion is **DENIED**.

CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under section 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability ("COA") may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473 (2000). In cases where a district court rejects a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial or dismissal of Blake's Section 2255 Motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See id*. Thus, a certificate of appealability shall not be issued.

**IT IS THEREFORE ORDERED** that Movant Robert Timothy Blake's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (ECF No. 93) is **DENIED**.

**IT IS FURTHER ORDERED** that all other pending motions, if any, are **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that a certificate of appealability is **DENIED**.

SIGNED this 11th day of December, 2019.

XAVIER  RODRIGUEZ
UNITED STATES DISTRICT JUDGE